The bill further stated that for a number of years complainants were ignorant of the situation of their father's estate, and further, that Hugh Torrance made repeated declarations that he did not intend to hold nor did he claim Flora and her children as his property, but that they should be distributed among the children of Gilbraith Falls, whereby complainants became less anxious to press for an immediate decision.
The prayer of the bill was that James Torrance might deliver up Flora and her children, and account for the value of their labor.
The answer of the defendant admitted that Hugh Torrance died, as stated in the bill, possessed of Flora, and also of her children; and stated that in November, 1781, the personal estate of Gilbraith Falls was *Page 198 
exposed to public sale; that in March, 1784, another sale was made by the administrator, at which not only almost all the property sold at the sale of 1781 was again sold, but also sundry articles which had come to the hands of the administrator since 1781; that this second sale was made on account of the depreciation of the currency of the country in 1781, 1782, and 1783; that owing to the entire depreciation of the continental money before 1784, the value of the estate was greatly reduced, and Hugh Torrance applied to the purchasers at the first sale (who were mostly the next of kin or near relations of Gilbraith Falls) to surrender their purchases and permit the property to be again sold, and many of them did so. That as to the negro Flora, she was the child of Binah, who belonged to the estate of G. Falls; that Binah was purchased at the sale in 1781 by Mrs. Torrance, then the widow of G. Falls, at the price of £ 70 (415) hard money, which was a fair price; that Flora was born after this purchase of Binah, but whether before or after the sale in 1784 defendant was ignorant; that Binah was sold at the second sale in 1784, and purchased by Hugh Torrance, and Flora, if then born, must have been an infant, and was probably sold with her mother; and defendants insisted that if Flora was born before the second sale, she was born the property of Hugh Torrance, inasmuch as her mother, Binah, belonged to him under the purchase of the widow at the first sale, and his subsequent intermarriage with her; and that Hugh Torrance was not bound in law or equity to expose Flora to sale for the benefit of the estate of G. Falls.
Defendants also stated that a settlement of the accounts of the estate of G. Falls had taken place, and complainants had given receipts for their distributive shares more than eighteen years ago, and some as far back as 1785, and insisted that as the bill charged no fraud, and pointed out no specific errors, complainants ought not, after this lapse of time, to open the account, and they prayed all the benefit which equity would give from lapse of time.
As to the coverture of some of the complainants, defendants insisted it was true of a few only, and their husbands were competent to take care of their rights, and had every opportunity of learning the situation of the girl Flora; and as to declarations made by Hugh Torrance, that he held Flora and her children in trust for complainants, defendants answered that they did not admit, nor had they reason to believe, such to be the fact, but rather the contrary.
Upon reading the evidence in this case, the general (418) conclusion I have reached is that Flora and her descendants *Page 199 
were, after his death, part of the personal estate of Gilbraith Falls, and as such subject to distribution amongst the next of kin, not having been otherwise disposed of by the administrators in their regular exercise of their prescribed legal duties. It is not shown at what period of time Flora was born, whether before or after the first sale; but from her not being named in the first account of sales returned, from her apparent age at the second sale, from the reason then assigned by the administratrix for not selling her, and from other circumstances appearing in the case, I feel warranted in the conclusion that she was born between the two sales. But admitting that she was born before the first sale, and that Binah, her mother, and herself were purchased by the widow, administratrix, that sale, as it respected Flora, was a nullity, and can inure only to the benefit of the distributees. Their right to the property was not divested by it.
The same consequence follows if she was born after the first sale and before the second. In either case she should have been disposed of with the rest of the personalty, and the administratrix omitting to make such disposition, must, in equity, be considered as retaining the possession under the original trust. When the second sale took place, it is admitted by the answer that Hugh Torrance was married to the widow, and that he possessed himself of Flora, who was then bound by the trust, of which Torrance had notice, as further appears in the answer, for he applied to the purchased at the first sale to surrender their purchase for the purpose of a resale. He is, therefore, bound in equity, with (419) respect to Flora and her children, to the execution of the trust.
From this short review of the case it results that the complainants are entitled to a decree, unless relief is barred by the lapse of time. It is true that a court of equity is unwilling to countenance stale demands; and is averse to an interference in behalf of persons who have slept upon their rights, even in cases where there is no bar interposed by the statute of limitations. They will in such cases adopt the presumption, founded on the efflux of time, that the controversy has been settled by payment or otherwise. Time is, in such cases, a circumstance affording a strong primafacie presumption, but liable to be repelled by other circumstances explanatory of the delay.
There has been in this case a very considerable lapse of time, which, considered alone, would be much more than sufficient to bar many claims to which no act of limitations applies, and which at first view forms a great objection to the relief sought. But I cannot but think that the peculiar circumstances of the case are of strength sufficient to destroy any presumption arising from the delay, and to enable the Court to do justice without infringing any of its rules or holding out encouragement to the spirit of wanton and dormant litigation. The property remains *Page 200 
the same, with only the addition of an increase from the parent stock; it is completely identified, and has undergone no other change of possession than that from Hugh Torrance to his administrator. The state of the property seems to have been known to some of the witnesses, and most probably to the neighborhood, so that no purchaser will be vexed by a disputed title. The complainants could only assert their right by a legal controversy with the man who had married their mother, and who, it may be reasonably inferred, from the character given of him by the witnesses, had treated them with parental affection. But if these ties were too feeble to restrain them, those of interest may be deemed sufficient, for he had said in repeated conversations with the (420) witnesses that the property he acquired by his marriage should devolve upon the children of Gilbraith Falls, who had made it; and it is not at all probable that those children were ignorant of such declarations. Under the influence of these combined motives, the distributees may be supposed to have abstained from the assertion of their rights, without taking into view the legal disabilities under which some of them continued. Against these circumstances I cannot presume that their demands have been settled or that they have unreasonably slept upon their rights; but am of opinion that the equity of the case is in their favor.