It was then averred that before the plaintiff Lavinia arrived at full age, viz., in 1801, the defendant Harman and one William Petty, Sr., the grandfather of the plaintiff Lavinia, with a view of making (192) her half brothers and sisters, also grandchildren of W. P., Sr., equal in point of property with the plaintiff, fraudulently procured her to accept of two negroes and give a release of all her claims upon the estate of her father; that Keziah, the widow of Dilliard and the wife of the defendant, was dead, and that the female slave had many children, who were still in the possession of the defendant.
The bill then set forth the intermarriage of the plaintiffs, and prayed a discovery of the number and names of the descendants of the slave of *Page 113 
which Dilliard died possessed; that the release given in 1801 might be declared void, and for an account and distribution of the personal estate of the intestate.
The defendant in his answer alleged that Dilliard never owned the slave mentioned in the bill, and insisted that she was only lent him by William Petty, Sr., the father of his wife. He denied that he had ever received anything from the estate of Dilliard, and that he never knew, until within a short time, that Keziah, his wife, had administered; and averred that he had always thought administration had been committed to her father, William Petty, Sr. He stated that after his intermarriage with the widow of Dilliard, her father had told him there was some property of his (Dilliard's) to which defendant and the plaintiff Lavinia were entitled; that it consisted of money and a debt due by one Thomas; and that as he, the father, was old and infirm, he suggested that the defendant should take control of the debt, which was in amount about equal to the share of the estates to which the defendant, in right of his wife, was entitled; that the defendant acquiesced in the proposal, and the more readily as he did not know that his wife, independently of her father, was entitled to anything; that understanding Thomas to be insolvent, he had, for a trifling consideration in goods, assigned the debt to a merchant in the neighborhood.
It was admitted that the defendant had possession of the slave (193) mentioned in the bill, and of her increase, but insisted that he claimed them under an advancement made Keziah, after her intermarriage with the defendant, by her father, William Petty, the elder.
As to the release, it was alleged that the defendant, feeling uneasy at some reports in the neighborhood respecting a gift of the slave by William Petty, Sr., to Dilliard, had as he then believed, on the day when the plaintiff Lavinia came of age, but as it afterwards appeared on the day when she was 20 years old, caused a meeting to be had at W. P.'s, Sr., where the plaintiff Lavinia then lived, at which were present the most respectable people in the neighborhood, where the whole matter was discussed, and when the defendant and William Petty, Sr., conveyed to the plaintiff two negroes by way of advancement and for the purpose of settling her claims to her father's estate. The defendant insisted that these two negroes were much greater in value than the share of the plaintiff Lavinia in the estate of her father, and that the settlement was liberal, from the natural affection of the grandfather and from the regard which the defendant had to the plaintiff Lavinia, who had been nurtured by him from her infancy. All fraud and concealment was denied and the transaction insisted to have been fair. The answer averred that the defendant's wife had died in 1820, and William Petty, *Page 114 
Sr., in 1822; that the plaintiff Lavinia came of age in 1802 and married in 1806, and lived in the neighborhood of the defendant until 1811, during which time no complaint had ever been made of the settlement; and the defendant prayed the benefit of any presumption which could arise from this lapse of time. The defendant also alleged that he had been in possession of the slave mentioned in the bill, and her increase, from 1784 up to the time of filing this bill, claiming them as his (194) own, and insisted upon any benefit he might derive under the statute of limitations. The allegations of the answer were fully supported, in the opinion of the Court, by the testimony. It particularly appeared from the copy of the record of a suit against Thomas that the execution against his bail was under the control of the merchant to whom in his answer the defendant averred he had assigned the debt.
It has been very impressively urged upon us, in a short and pithy argument, that this claim is not barred by lapse of time; and Falls v. Torrance, 9 N.C. 490, and 11 N.C. 412, is cited as in point. In that case we considered the trust, as to the negroes, an open one; for it was very clearly shown, by documentary evidence, that they never were brought into account, because of an unfounded claim of the widow. Frequent recognitions of these facts were made during the whole of the period relied on, as furnishing evidence of a satisfaction. In this case, however, it does not appear that any part of the father's estate was not brought into account. As to the interest, that was necessarily passed on when the principal was; and although the plaintiff, being an infant, was not bound by the settlement made by her grandfather, yet she was of mature years, and knew that it had been made, was able to understand it, and communicate to her husband what had been done. Now, after waiting more than twenty-two years since she came of age (and she was twenty-four or five when she married), and after the death of her grandfather, who had a principal share in the settlement, nay, almost the sole management of it, this claim is preferred.
(195) There is one circumstance which is strong in support of the defendants' answer; it is Thomas's debt. He swears it was considered to be worth but little, Thomas being insolvent, and that he took it as such, and sold it for a small sum. The record filed as an exhibit confirms him in this, for it appears that the judgment was collected from the bail. I think this is not an open trust, but that it was closed *Page 115 
in 1801 — at least, that it then lost that character, notwithstanding the infancy of the plaintiff. Her infancy, it is true, protected her from being bound by the settlement; but it did not prevent the character of the trust from being changed.
PER CURIAM. Let the bill be dismissed, with costs.
Cited: Villines v. Norfleet, 17 N.C. 173; Shearin v. Eaton, 37 N.C. 285;Tate v. Dalton, 41 N.C. 565; Grant v. Hughes, 94 N.C. 237.